# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FRANCISCO GONZALEZ (#K-82685), | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 05 C 5581 |
| | ) |
| PARTH GHOSH, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

The plaintiff, a state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendants, the warden and medical director at the Stateville Correctional Center, have violated the plaintiff's constitutional rights by acting with deliberate indifference to his serious medical needs. More specifically, the plaintiff alleges that the defendants have denied him proper care and treatment for his various gastro-intestinal ailments. This matter is before the court for ruling on Warden Battaglia's motion for summary judgment. For the reasons set forth in this order, the motion is granted. The plaintiff failed to exhaust administrative remedies as to Battaglia; regardless, the warden lacks direct, personal involvement in the plaintiff's medical care.

## SUMMARY JUDGMENT STANDARDS

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Prime Northgate Plaza*

Battaglia became the Warden and Chief Administrative Officer at Stateville on March 15, 2005. (Def.'s Ex. B, Affidavit of Dee Battaglia, ¶ 1.)

On June 11, 2005, a Stateville physician ordered that the plaintiff return to the Chicago Medical Center for follow-up treatment with a gastroenterologist; however, prison officials failed to comply with the doctor's directives. (Complt., ¶ 8.)

The plaintiff filed a fourth grievance on September 7, 2005. Although the grievance principally related to the circumstances surrounding a cell search, the plaintiff charged that tactical team officers had purposefully denied his repeated requests for medical attention due to his severe stomach and shoulder injuries. (Pl.'s Mem. In Opp'n To Summ. J., Ex. 8.) A counselor reviewed the plaintiff's fourth grievance on September 15, 2005, and determined that it could not be resolved at that level. (Pl.'s Mem. In Opp'n To Summ. J., Ex. 8.)

The plaintiff initiated this lawsuit on September 27, 2005, twelve days later. (*See* Complt.)

The plaintiff has experienced problems finalizing the fourth grievance. On February 22, 2006, a grievance officer recommended that Dr. Ghosh respond to the medical issues within thirty days. (Pl.'s Mem. In Opp'n To Summ. J., Ex. 8-B.) Battaglia concurred in the grievance officer's decision. (*Id.*) The plaintiff appealed his September 7, 2005, grievance to the Department's ARB on March 20, 2006; however, the grievance was returned to him on March 24, 2006, with instructions to forward the appeal to the ARB only after the response from Dr. Ghosh was reviewed by the Grievance Officer and Battaglia. (*Id.*, Exs. 8-A, 9.)

On June 19, 2006, the plaintiff sent a letter to the ARB in another attempt to appeal the subject grievance due to the fact that he had still not received a final response from the Stateville health care unit administrator or the grievance officer. (*Id.*, Exs. 8-C, 9.) On August 3, 2006, ARB

Chairperson Brian Fairchild once again directed Dr. Ghosh and a TACT team officer to respond to the plaintiff's September 7, 2005 grievance. (Pl.'s Mem. In Opp'n To Summ. J., Ex. 9.)

Attached to the plaintiff's memorandum in opposition to Battaglia's motion for summary judgment, is his "Declaration" (*See* Gonzalez Decl.(1).) In that declaration, the plaintiff states that no follow-up action has been taken by Stateville authorities in response to the ARB's remand. (*See* Gonzalez Decl.(1), ¶ 5.)

## DISCUSSION

There is no genuine issue as to any material fact, and the court finds that Warden Deirdre Battaglia is entitled to judgment as a matter of law. The plaintiff failed to exhaust available administrative remedies with regard to Battaglia prior to filing suit. Furthermore, even assuming *arguendo* that the plaintiff did exhaust his administrative remedies, Battaglia cannot be held liable as she lacks personal involvement in the plaintiff's medical care.

### I.     Exhaustion

No material facts are in dispute with respect to whether the plaintiff exhausted his administrative remedies prior to filing suit. Three of the plaintiff's four grievances pre-dated Battaglia's arrival at Stateville. The plaintiff filed suit before the fourth grievance–which, in any case, related only tangentially to his medical care–could be resolved.

The Prison Litigation Reform Act of 1996 contains a comprehensive administrative exhaustion requirement. Under that statute, "[n]o action shall be brought with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system

6

before filing a claim under Section 1983." *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999), *cert. denied*, 532 U.S. 1065 (2001).

An inmate must take all the steps required by the prison or jail's grievance system in order to exhaust his administrative remedies properly. *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004); *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002). Exhaustion is a precondition to filing suit, so that an inmate's attempt to exhaust available administrative remedies in the midst of litigation is insufficient. *Ford*, 362 F.3d at 398; *Perez v. Wisconsin Dep't of Corrections*, 182 F.3d 532, 536-37 (7th Cir. 1999). The purpose of the exhaustion requirement is to give corrections officials the opportunity to address complaints internally before the filing of a federal lawsuit. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). Moreover, failure to exhaust administrative remedies is an affirmative defense; prison officials have the burden of proving that the inmate had available remedies that he did not utilize. *See, e.g., Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004).

Inmates incarcerated within the Department may file grievances pursuant to the Department's Rule 504F: Grievance Procedures for Committed Persons. (Def.'s Ex. A, Affidavit of Brian Fairchild, ¶ 2.) The process is as follows:

> Generally, an inmate must first attempt to resolve grievances through his counselor. If the grieved issue remains unresolved after such informal efforts, or for example, involves a disciplinary proceeding, the inmate may submit a written grievance on a grievance form to the facility Grievance Officer designated by the Chief Administrative Officer ("CAO"). The Grievance Officer may personally interview the inmate and/or other witnesses as deemed appropriate and obtain relevant documents to determine the merits of the inmate's grievance. Upon completion of such investigation, the Grievance Officer's conclusions and if appropriate, recommended relief is forward to the CAO. The CAO, or CAO's designee's, decision is then submitted to the grieving inmate.

7

*Ltd. Partnership v. Lifecare Acquisitions Corp.*, 985 F. Supp. 815, 817 (N.D. Ill. 1997). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Walker v. Northeast Regional Commuter Railroad Corp.*, 225 F.3d 895, 897 (7th Cir. 2000).

However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 393 (7th Cir. 1997), *cert. denied*, 523 U.S. 1118 (1998).

## FACTS

The following facts are uncontested for purposes of this motion:

The plaintiff is a state prisoner, confined at the Stateville Correctional Center at all times relevant to this action. (*See* Complt., p. 2.) Deirdre Battaglia is the Warden and Chief Administrative Officer ("CAO") at Stateville. (Def.'s Ex. B, Affidavit of Dee Battaglia, ¶ 1.) Battaglia has held that position since March 15, 2005. (*Id.*)

Prior to his conviction, the plaintiff was incarcerated at the Henry County Jail, where he began experiencing severe stomach pain. (Complt., ¶ 1.) He was examined and diagnosed as having irritable bowel syndrome and possible cholycystitis. (*Id.*, ¶¶ 1-2, Ex. 3.) At that time, it was recommended that the plaintiff undergo additional outpatient medical testing for his condition. (*Id.*, ¶ 2.)

On June 22, 2000, following his conviction, the plaintiff was transferred to the custody of the Illinois Department of Corrections and moved to Stateville. (*Id.*) Once there, instead of undergoing the additional prescribed medical testing, he was only given pain medication. (*Id.*, ¶ 3.) The pain medication did not alleviate the plaintiff's distress. (*Id.*)

In November 2001, a determination was made that the plaintiff required surgery to remove his gall bladder and tumors. (*Id.*, ¶ 4.) After the surgery, however, the plaintiff's stomach condition only worsened. (*Id.*, ¶ 5.)

On August 12, 2002, the plaintiff filed a grievance stating that he suffered from a number of ongoing health problems which had not all been addressed by the Illinois Department of Corrections. (Pl.'s Mem. In Opp'n To Summ. J., Ex. 1.) The plaintiff claimed that he had brought these problems to the attention of the prison's medical personnel, but that they refused to examine him to determine the cause of his condition(s). (*Id.*) On September 9, 2002, a counselor recommended that the grievance be denied as moot on the basis that a physician had evaluated the plaintiff on August 24, 2002. (*Id.*)

A grievance officer reviewed the plaintiff's August 12, 2002, grievance and determined that no further action was required because the plaintiff's medical concerns were being addressed. (Pl.'s Mem. In Opp'n To Summ. J., Ex. 1.) The Warden and Chief Administrative Officer at the time, Kenneth Briley, concurred in the grievance officer's decision. (*Id.*) The plaintiff filed an appeal of his grievance with the Department's Administrative Review Board ("ARB") on October 28, 2002; however, the appeal was denied on November 25, 2002. (*Id.*, Def.'s Ex. A, Affidavit of Brian Fairchild, ¶ 7.) Deirdre Battaglia was not the Warden and CAO at Stateville during this time period. (Battaglia Affidavit, ¶ 1.)

The plaintiff filed a second grievance on October 29, 2003, requesting surgery for a tumorous growth around his gallbladder which was causing him "unbearable" pain. (Pl.'s Mem. In Opp'n To Summ. J., Ex. 3.) The plaintiff has submitted no documentation regarding the disposition of that grievance and the ARB has no record of any appeal relating to any such grievance. (Def.'s Ex. A, Affidavit of Brian Fairchild, ¶ 8.) Deirdre Battaglia was not the Warden and CAO at Stateville during this time period. (Battaglia Affidavit, ¶ 1.)

In November 2003, the plaintiff received treatment for his stomach condition at the University of Illinois at Chicago Medical Center (the "Chicago Medical Center"), where an endoscopy and colonoscopy were performed. (Complt., ¶ 7.) At that time, the plaintiff had two tumors removed and medication was prescribed, which he claims he never received. (*Id.*)

The plaintiff filed a third grievance, which he designated as an emergency grievance, on March 8, 2004. In the third grievance, the plaintiff maintained that prison officials refused to treat him for his stomach pain and failed to follow the Chicago Medical Center's prescribed treatment and diagnostic procedure. (Pl.'s Mem. In Opp'n To Summ. J., Ex. 2.) Then-warden Kenneth Briley determined that no emergency was substantiated and directed the plaintiff to file the grievance "in the normal manner." (*Id.*) However, the record reflects no follow-up by the plaintiff to pursue the grievance further. Deirdre Battaglia was not the Warden and CAO at Stateville during this time period. (Battaglia Affidavit, ¶ 1.)

In May 2004, the plaintiff was treated at the Chicago Medical Center, where he was diagnosed with gastritis and gastroesophageal reflux disease symptoms. (Pl.'s Mem. In Opp'n To Summ. J., Ex. 10.) The attending physician recommended a change in the plaintiff's medication. (*Id.*)

4

If, after receiving the CAO's decision the inmate feels the issue is unresolved, he may appeal in writing to the Director of the Department by submitting the Grievance Officer's report and CAO's decision. The ARB, as the Director's designee, reviews the appeal and first determines whether the inmate's grievance can be handled without the necessity of a hearing. If so, the inmate is so advised. Other matters are scheduled for an ARB hearing involving an interview of the grieving inmate, examining relevant documents and at the ARB's discretion, calling witnesses. The ARB submits a written report of its findings and recommendations to the Director or Director's designee who then reviews the report and makes a final determination on the grievance. A copy of the ARB's report and the Director's final decision is sent to the inmate who filed the grievance. The originals of these documents are maintained in the ARB's files. Department Rule 504F: Grievance Procedures for Committed Persons provides no further means for review beyond this step.

\* \* \* \* \*

An inmate may request a grievance be handled on an emergency basis by forwarding the grievance directly to the CAO rather than to a counselor or grievance officer. If the CAO determines that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the inmate, the grievance may be handled on an emergency basis. An inmate may appeal the CAO's decision in such a situation to the ARB. The appeal is then handled in accordance with the procedure prescribed [in the preceding paragraph]. (Def.'s Ex. A, Affidavit of Brian Fairchild, ¶¶ 2-3, 5.) *See also* Ill. Admin. Code tit. 20, § 504.800, *et seq*.

The court finds that the plaintiff failed to exhaust his administrative remedies prior to filing suit with respect to any claim he may have had against Warden Battaglia. The plaintiff filed his first grievance on August 12, 2002, almost three years prior to the time Battaglia became warden of Stateville. Furthermore, while the plaintiff did exhaust his administrative remedies with regard to that grievance, the counselor who reviewed the grievance determined that he was receiving adequate medical care.

The plaintiff filed his second and third grievances on October 23, 2003, and March 8, 2004, respectively, also before Battaglia began working at Stateville. In any event, the plaintiff failed to exhaust his administrative remedies with respect to either of these two grievances.

The plaintiff filed his fourth grievance on September 7, 2005, twenty days before he initiated this lawsuit. Thus, in view of the administrative review process described above, it is clear that the plaintiff could not have exhausted his administrative remedies during the twenty-day period between the time he filed his grievance and the time he initiated this lawsuit. The record reflects that the only action taken during the twenty-day period in question entailed a counselor reviewing the grievance and determining that it could not be resolved at the counselor's level and that it should be forwarded to a grievance officer. (Pl.'s Mem. In Opp'n To Summ. J., Ex. 8.) The grievance was forwarded to the grievance office and received in that office on September 20, 2005. (*Id.*) The plaintiff did not wait for the appropriate officials to respond to his grievance, and did not pursue the appeal process, before bringing suit on September 27, 2005. [In fact, the complaint is dated September 21, 2005]. Therefore, the plaintiff failed to exhaust his administrative remedies as to the only grievance he has filed since Battaglia became warden at Stateville.

The plaintiff implicitly argues that no administrative remedy is available because he still has received no final decision on his fourth grievance. It is true that prison officials' failure to respond to an inmate's grievances renders administrative remedies "unavailable" and excuses the prisoner from pursuing them further. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). However, in this case the plaintiff did not give prison officials the opportunity to rectify the situation before filing suit. Also, there is no "futility exception" to the PLRA's exhaustion requirement. *Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000). "No one can know whether administrative requests will be futile; the only way to find out is to try." *Perez*, 182 F.3d at 535. "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, **even if the prisoner exhausts intraprison remedies**

**before judgment.**" *Perez*, 182 F.3d at 535 (emphasis added); *see also Ford, supra*, 362 F.3d at 398. Thus, even if the only grievance the plaintiff filed while Battaglia was warden ultimately reached a stumbling block, the plaintiff filed suit prematurely; consequently, he is barred from now arguing that no administrative remedies were available.

In summary, the court finds that no material facts are in dispute with respect to whether the plaintiff exhausted his administrative remedies prior to filing suit. The only grievance the plaintiff completely exhausted predated Battaglia's arrival at Stateville by almost three years. The plaintiff did file a single grievance while Battaglia was warden. That grievance related only tangentially to the plaintiff's medical care; moreover, he immediately filed suit without waiting for the grievance to be resolved. The court therefore concludes that Battaglia is entitled to judgment as a matter of law pursuant to 28 U.S.C. § 1997e(a).

## II. Personal Involvement

Because Battaglia's motion for summary judgment is granted on grounds of failure to exhaust, the substantive merit of the plaintiff's medical claims need not be considered. *See Perez, supra* ("a suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits"). Nevertheless, assuming that administrative remedies were "unavailable" to the plaintiff because he received no responses to certain grievances, Battaglia is not liable because she did not personally participate in or cause the alleged unconstitutional actions.

An individual cannot be held liable in a Section 1983 action unless she caused or participated in the alleged constitutional deprivation. *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). The mere fact that Battaglia is the current warden at Stateville is

**before judgment.**" *Perez*, 182 F.3d at 535 (emphasis added); *see also Ford, supra*, 362 F.3d at 398. Thus, even if the only grievance the plaintiff filed while Battaglia was warden ultimately reached a stumbling block, the plaintiff filed suit prematurely; consequently, he is barred from now arguing that no administrative remedies were available.

In summary, the court finds that no material facts are in dispute with respect to whether the plaintiff exhausted his administrative remedies prior to filing suit. The only grievance the plaintiff completely exhausted predated Battaglia's arrival at Stateville by almost three years. The plaintiff did file a single grievance while Battaglia was warden. That grievance related only tangentially to the plaintiff's medical care; moreover, he immediately filed suit without waiting for the grievance to be resolved. The court therefore concludes that Battaglia is entitled to judgment as a matter of law pursuant to 28 U.S.C. § 1997e(a).

## II. Personal Involvement

Because Battaglia's motion for summary judgment is granted on grounds of failure to exhaust, the substantive merit of the plaintiff's medical claims need not be considered. *See Perez, supra* ("a suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits"). Nevertheless, assuming that administrative remedies were "unavailable" to the plaintiff because he received no responses to certain grievances, Battaglia is not liable because she did not personally participate in or cause the alleged unconstitutional actions.

An individual cannot be held liable in a Section 1983 action unless she caused or participated in the alleged constitutional deprivation. *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). The mere fact that Battaglia is the current warden at Stateville is

insufficient to establish liability, as the doctrine of *respondeat superior* (blanket supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Section 1983 does not create collective or vicarious responsibility. *Id.* "Supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable." *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (citations omitted). To be held liable under 42 U.S.C. § 1983, supervisors "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Id.* In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery. *Hildebrandt v. Illinois Dept. of Natural Resources*, 347 F.3d 1014, 1039 (7th Cir. 2003). Because the plaintiff has failed to establish that Battaglia was personally involved in–or even aware of–any problems the plaintiff was experiencing with respect to his medical care, she is entitled to judgment as a matter of law.

In her affidavit, Battaglia states that she has no personal knowledge of or any involvement with either the plaintiff or the events giving rising to this lawsuit. (Def.'s Ex. B, Affidavit of Dee Battaglia, ¶ 2.) She further states that she neither dealt with nor was aware of any of the plaintiff's complaints or grievances. (*Id.*, ¶ 3.) Furthermore, Battaglia did not deny or direct that any prison employee deny medical treatment to the plaintiff. (*Id.*, ¶ 4.) As noted *supra*, Battaglia became warden at Stateville only six months before the plaintiff commenced this lawsuit.

While Battaglia may not have had personal knowledge of the plaintiff's grievances, as the Warden and Chief Administrative Officer, she has the responsibility for reviewing inmate grievances. She may delegate this responsibility to others who sign her name for her, but the buck

11

still stops at the warden. *See Goodman v. Carter*, No. 00 C 0948, 2001 WL 755137, at *5 (N.D. Ill. Jul. 2, 2001) (Lindberg, J.) (The warden "may delegate his duty to review inmate grievances. Nevertheless, he may not play a 'shell game' delegating responsibility without disclosing to whom it was delegated [and then deny] personal responsibility when a prisoner seeks to hold him accountable.") By delegating the task to others, Battaglia effectively consents, approves and, in effect, turns a "blind eye" to how those grievances are handled. *See Powell v. Godinez*, No. 93 C 3469, 1997 WL 603927, at *5 (N.D. Ill. Sep. 24, 1997) (Manning, J.) ("[i]f the warden simply has a policy of not reading complaints from prisoners, it could be considered intentional ignorance, which can carry the same consequences as actual knowledge.") Those signing the warden's name effectively act as her agent and their actions are accordingly attributable to her.

Nevertheless, a warden is shielded from liability when a plaintiff is receiving ongoing care from health care professionals. *See e.g., Johnson v. Snyder*, 444 F.3d 579, 586 (7th Cir. 2006) (fact that plaintiff's medical needs were being addressed by the medical staff insulated the warden from liability); *contrast Reed v. McBride*, 178 F.3d 849, 854-56 (7th Cir. 1999) (warden required to act where officials allegedly denied an inmate life-sustaining medication and food). In this case, the record reflects that the plaintiff has received continuing in-patient and out-patient medical care since his confinement at Stateville. The plaintiff may be able to establish that the quality of the defendant Ghosh's care has been constitutionally insufficient. However, the warden must rely on the expertise of health care professionals to assess the plaintiff's needs and to provide appropriate treatment. As the plaintiff has received ongoing medical treatment for his stomach condition, Battaglia cannot be held personally liable for any deficiencies simply because she is the warden.

In conclusion, there are no material facts in dispute and the court finds that Battaglia is entitled to judgment as a matter of law. The plaintiff failed to exhaust administrative remedies regarding any grievance filed while Battaglia was warden. Furthermore, Battaglia lacks direct, personal involvement in the provision of inmate medical care. Accordingly, Battaglia's motion for summary judgment is granted.

IT IS THEREFORE ORDERED that Battaglia's motion for summary judgment [#44] is granted. At the close of the case, the clerk is directed to enter judgment in favor of Battaglia pursuant to Fed. R. Civ. P. 56. Battaglia is terminated as a defendant. The plaintiff may proceed only against the defendant Ghosh.

Enter: _____

JOHN W. DARRAH
United States District Judge

Date: 2-2-07